IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 21, 2013

**IN THE MATTER OF: DEON S.**

**Direct Appeal from the Juvenile Court for Madison County**
**No. 51-46, 814     Christy R. Little, Judge**

**No. W2012-01950-COA-R3-PT - Filed April 17, 2013**

This is a termination of parental rights case.  Mother appeals the trial court's termination of her parental rights on several grounds, including abandonment by willful failure to visit pursuant to Tennessee Code Annotated Sections 36-1-113(g)(1) and 36-1-102(1)(A)(i).  We conclude that the ground of abandonment by willful failure to visit is met by clear and convincing evidence in the record and that there is also clear and convincing evidence that termination of Mother's parental rights is in the child's best interest.  Affirmed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and DAVID R. FARMER, J., joined.

Daniel P. Bryant, Clarksville, Tennessee, for the appellant, Ashley S.

Robert E. Cooper, Jr., Attorney General and Reporter; Mary Byrd Ferrara, Assistant Attorney General, for appellee, State of Tennessee, Department of Children's Services.

Lanis L. Karnes, Jackson, Tennessee, Guardian ad Litem.

**OPINION**

**MEMORANDUM OPINION**[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

(continued...)

## I. Background

Ashley S. ("Mother," or "Appellant") and Ractus H. ("Father")[2] are the parents of Deon, born in April, 2010.[3] On January 24, 2011, the State of Tennessee Department of Children's Services ("DCS," or "Appellee") filed a petition to adjudicate dependency and neglect and for temporary custody of Deon. In relevant part, the petition states that, on or about January 19, 2011, the child's maternal grandmother, Linda P., brought Deon to the local DCS office. When interviewed, Linda P. stated that she had received a call from a family friend who told Linda P. that Mother had left Deon with a male friend who is not related to the child on January 14, 2011. Although Mother indicated to the friend that she would return within the hour, as of January 19, she had not returned or called. Linda P. picked Deon up from the man's home and took him to DCS, stating that she could not care for the child because of physical, medical and financial reasons. When asked about Mother's whereabouts, Linda P. stated that Mother had been incarcerated, but that she thought Mother was "doing better" since her latest release from jail in December 2010. Linda P. further stated that Mother had a habit of leaving the child for days at a time. DCS scheduled a Child and Family Team meeting for later that day. Linda P. stated that she would return to DCS for that meeting, but failed to do so, even after DCS made contact with her. DCS also attempted to contact Mother, but these attempts were unsuccessful, as were DCS's attempts to locate Mother at local hospitals and jails.

On January 25, 2011, the Juvenile Court of Madison County entered a protective custody order, finding that Deon was dependent and neglected, and that he should be removed to DCS custody. The court found that Mother had a history of drug abuse and

---

[1](...continued)

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] Father's parental rights were terminated in the trial court's August 1, 2012 order, discussed *infra*. Father has not appealed the termination of his parental rights. Because he is not a party to this appeal, we will limit our discussion only to facts and procedural history relevant to the termination of Mother's parental rights.

[3] It is the policy of this court to use the initials of children and parties involved in juvenile court actions to protect the privacy of the children involved.

prostitution and had been in and out of jail. The court further found that Mother had a history of leaving the child with various persons for days at a time. A guardian ad litem was appointed for the child and an attorney was appointed to represent Mother, who was found to be indigent.

An adjudicatory hearing was held on March 8, 2011; Mother did not attend, but her appointed attorney was present. Following that hearing, the court entered an order on March 22, 2011, finding that DCS had shown, by clear and convincing evidence, that Deon is dependent and neglected, and ordering custody to remain with DCS.

On April 12, 2012, DCS filed a petition to terminate the parents' rights.[4] As grounds for termination of Mother's parental rights, DCS averred: (1) abandonment by willful failure to visit and willful failure to support pursuant to Tennessee Code Annotated Sections 36-1-113(g)(1) and 36-1-102(1)(A)(i); (2) abandonment by failure to establish a suitable home pursuant to Tennessee Code Annotated Sections 36-1-113(g)(1) and 36-1-102(1)(A)(ii); (3) abandonment by incarcerated parent pursuant to Tennessee Code Annotated Sections 36-1-113(g)(1) and 36-1-102(1)(A)(iv); and (4) persistence of conditions pursuant to Tennessee Code Annotated Section 36-1-113(g)(3). DCS also averred that termination of Mother's parental rights was in Deon's best interest. DCS further asserted that, prior to filing the petition, it had made reasonable efforts to assist Mother in the goal of reunification.

The record clearly reveals that Mother has failed to engage in any meaningful way in these proceedings. Despite notice from DCS, she did not participate in the formation or evaluation of any of the child's permanency plans. Furthermore, she failed to appear at the dependency and neglect, adjudicatory, or final hearing in this case.

Because of Mother's lack of participation, subsequent to the filing of its petition to terminate parental rights, DCS moved the court to be relieved of its obligation to provide reasonable efforts toward reunification. By Order of June 12, 2012, the trial court found, by clear and convincing evidence, that:

> [DCS] has made and is making reasonable efforts in achieving the child's permanency goal of adoption by providing the services as listed in the child's permanency plans including but not limited to referring Deon [] for regular medical assessments

---

[4] Prior to DCS filing its petition, on January 19, 2012, the guardian ad litem filed a petition to terminate parental rights. Both the DCS petition and the guardian ad litem's petition rely upon the same grounds for termination.

and any follow-up treatment; providing assistance with Deon's life story book; continuing the legal process to terminate parental rights so Deon will be free for adoption; and by diligently searching for an appropriate adoptive home for Deon.

The Court finds that [DCS's] motion to be relieved of making reasonable efforts toward reunification is well taken and is therefore granted based upon the fact and reasoning contained therein.

A hearing on the petition to terminate parental rights was held on July 10 and July 17, 2012. Again, Mother failed to appear, but her attorney was present. By order of August 1, 2012, the trial court terminated Mother's parental rights to Deon. The trial based the termination of Mother's parental rights on the four grounds asserted in DCS's petition. Concerning the first ground for termination of parental rights, abandonment by failure to support or visit, the court made the following, relevant findings:

27. DCS made reasonable efforts to assist [Mother] in visiting the child[] by making referrals for supervised visitation.

*                         *                         *

29. [Mother] has made no attempts to visit Deon [] since he entered custody on January 19, 2011.

30. The Court finds by clear and convincing evidence the [Mother] . . . [has] abandoned Deon [] pursuant to T.C.A. §36-1-113(g)(1) and T.C.A. §36-1-102(1)(A)(i) in that [Mother] has willfully failed to visit (or visits have been tokens merely to maintain minimal contact) . . . for more than four (4) consecutive months prior to the filing of this Petition . . . . [Mother] . . . [has] abandoned Deon [] pursuant to T.C.A. §36-1-113(g)(1) and T.C.A. §36-1-102(1)(A)(i); therefore [her] parental rights should be terminated.

The trial court also found that Mother had abandoned Deon by failing to establish a suitable home. Specifically, the order states that:

33. For a period of four (4) months following removal, DCS has made reasonable efforts to assist [Mother] to establish a suitable

home for the child, but [Mother] ha[s] made no reasonable efforts to provide a suitable home and [has] demonstrated a lack of concern for the child to such a degree that it appears unlikely that [Mother] . . . will be able to provide a suitable home for the child at an early date.

\*                              \*                              \*

35. [Mother's] lack of reasonable efforts include failing to secure and maintain a stable home environment, failing to remain arrest free, failing to maintain regular contact with the case manager, failing to visit and support the child and failing to participate in Child and Family Team Meetings.

36.   The Court finds by clear and convincing evidence, Respondent[] . . . [Mother] [has] abandoned Deon [] pursuant to T.C.A. §36-1-113(g)(1) and T.C.A. §36-1-102(1)(A)(ii), and therefore, [her] parental rights should be terminated.

As a third ground for termination of Mother's parental rights, the trial court found abandonment by an incarcerated parent. Specifically:

37.  The Court finds, the Respondent, [Mother], pled guilty to prostitution on November 10, 2011.  She was sentenced to six (6) months imprisonment, 0 days to serve.  The conditions of her sentence were to complete A&D assessment and follow any treatment recommended therefrom and submit to an HIV test. [Mother] was placed on probation but violated the terms of her probation [in] March 2012.  She was ordered to complete a long-term treatment program.

\*                              \*                              \*

39. [Mother] . . . willfully failed to support said child for four (4) months immediately preceding [her] most recent incarceration[].

\*                              \*                              \*

44.  The Respondent, [Mother] . . . , engaged in such criminal

-5-

conduct prior to [her] original incarceration and [her] subsequent violation[] of probation/arrests, which exhibit a wanton disregard for the welfare of the child.

45. The Court finds by clear and convincing evidence, the Respondent[], [Mother] . . . [has] abandoned Deon [] pursuant to T.C.A. §36-1-113(g)(1) and T.C.A. §36-1-102(1)(A)(iv) and therefore [her] parental rights should be terminated.

Finally, the trial court found that Mother's parental rights should be terminated on the ground of persistence of conditions. The order specifically states, in relevant part, that:

46. The Court finds, the child has been removed from the custody of [Mother] for more than six (6) months.

47. The conditions which led to removal of the child from the home of [Mother] still exist and other conditions exist which in all probability would cause the child to be subject[ed] to further abuse and/or neglect, making it unlikely that the child could be returned to [Mother] in the near future.

48. There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to [Mother] in the near future.

\*                                    \*                                    \*

50. The conditions that prevent the child's return to the mother's home are that she failed to secure and maintain a stable home environment, failed to remain arrest free, failed to maintain regular contact with the case manager, failed to visit and support the child, failed to remain drug free, and failed to participate in Child and Family Team Meetings.

\*                                    \*                                    \*

52. The Court finds by clear and convincing evidence the parental rights of [Mother] should be terminated pursuant to T.C.A. §36-1-113(g)(3).

In addition to the foregoing grounds for termination of Mother's parental rights, the trial court also found, by clear and convincing evidence, that termination was in Deon's best interest. Concerning best interest, the order states, in pertinent part, that:

54. The Court finds, [Mother] . . . [has] not made an adjustment of circumstances, conduct or conditions as to make it safe and in the child's best interest to be in the home of the parent.

55. [Mother] . . . [has] failed to effect a lasting adjustment after reasonable efforts by available social agencies for such duration of time that lasting adjustment does not reasonably appear possible.

56. [Mother] . . . [has] not maintained regular visitation or other contact with the child.

57. A meaningful relationship has not otherwise been established between the child and . . . [Mother].

58. A change of caretaker and physical environment is likely to have a negative effect on the child's emotional, psychological and/or medical condition.

59. The physical environment of the home[] of [Mother] . . . [is] unhealthy and/or unsafe for the child.

60. There is criminal activity in [Mother's] home . . . .

61. The use of alcohol or controlled substances by [Mother] . . . render[s] [her] consistently unable to care for the child in a safe and stable manner.

62. [Mother] . . . [has] not paid child support consistently with the child support guidelines . . . .

63. [Mother] . . . [has] not paid a reasonable portion of the child's substitute physical care and maintenance when financially able to do so.

64. The child is placed in a foster home/relative foster home

that wishes to adopt the child.

65.  The child has established a strong bond with the foster parents.

## II.  Issues

Mother appeals and raises two issues for review:

1.  Whether any of the grounds for termination of Mother's parental rights are proved by clear and convincing evidence in the record.

2.  If so, whether termination of Mother's parental rights is in the child's best interest.[5]

## III.  Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn.1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174–75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

---

[5] We note that Mother does not specifically raise the issue of best interest in her appellate brief. However, as discussed, *infra*, this Court must make an independent inquiry into best interest when reviewing a trial court's decision to terminate a parent's rights.  We further note that, although Mother did not raise a best interest issue, the guardian ad litem's brief addresses only the best interest analysis and does not discuss any of the grounds for termination.  The absence of any discussion of the grounds for termination is not fatal to our consideration of the guardian ad litem's brief, especially in light of the fact that DCS's appellate brief thoroughly discusses the grounds for termination as well as the trial court's finding that termination of Mother's rights is in Deon's best interest.

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review as set forth in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp*., 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id*.; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

## IV. Grounds for Termination of Mother's Parental Rights

As set out above, the trial court found four grounds for terminating Mother's parental rights. Only one ground must be proved by clear and convincing evidence to justify termination of parental rights. Tenn. Code Ann. § 36-1-113(c).

The first ground asserted for termination of Mother's parental rights is abandonment pursuant to Tennessee Code Annotated Section 36-1-113(g)(1). Tennessee Code Annotated Section 36-1-102(1)(A)(i) defines "abandonment," in relevant part, as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who

is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child; . . . .

Willful failure to visit means "the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E).[6] As defined in Tennessee Code Annotated Section 36-1-102(1)(A)(i), *supra*, the four month time period for the ground of willful failure to visit is the four months immediately preceding the filing of the petition to terminate parental rights. In this case, DCS filed its petition on April 12, 2012.

The decision to pursue a termination of parental rights on the grounds of abandonment, persistence of conditions and/or substantial noncompliance generally invokes DCS's statutory duty to make reasonable efforts to facilitate the safe return of a child to the child's home. *In re R.L.F.*, 278 S.W.3d 305, 315 (Tenn. Ct. App. 2008) (citing Tenn. Code Ann. § 37-1-166(b), -166(a)(2), -166(g)(2)); *see also In re Tiffany B.*, 228 S.W.3d 148, 151, 160 (Tenn. Ct. App. 2007) (vacating a finding of abandonment, substantial noncompliance, and persistence of conditions for failure to make reasonable efforts). The statutory duty to make reasonable efforts includes an obligation to exercise "'reasonable care and diligence . . . to provide services related to meeting the needs of the child and the family.'" *In re R.L.F.*, 278 S.W.3d at 316 (emphasis omitted) (citing Tenn. Code Ann. § 37-1-166(g)(1)). Courts evaluate the reasonableness of DCS's efforts in consideration of the following factors:

> (1) the reasons for separating the parents from their children, (2) the parents' physical and mental abilities, (3) the resources available to the parents, (4) the parents' efforts to remedy the conditions that required the removal of the children, (5) the resources available to the Department, (6) the duration and extent of the parents' efforts to address the problems that caused the children's removal, and (7) the closeness of the fit between the conditions that led to the initial removal of the children, the requirements of the permanency plan, and the Department's efforts.

---

[6] Token visitation means that "visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(B).

*In re Tiffany B*., 228 S.W.3d at 158–59 (footnote omitted) (citing *In re Giorgianna H.*, 205 S.W.3d 508, 519 (Tenn. Ct. App. 2006)). Courts should decide the reasonableness of DCS's efforts "on a case-by-case basis in light of the unique facts of the case." *In re Bernard T.*, 319 S.W.3d 586, 601 (Tenn. 2010) (citing *In re J.C.D.*, 254 S.W.3d 432, 446 (Tenn. Ct. App. 2007)). The burden is on DCS to prove clearly and convincingly the reasonableness of its efforts. *In re R.L.F.*, 278 S.W.3d at 316 (citing *In re B.B.*, No. M2003-01234-COA-R3-PT, 2004 WL 1283983, at *9 (Tenn. Ct. App. June 9, 2004)).

The exercise of reasonable efforts is important because "[t]he success of a parent's remedial efforts generally depends on the Department's assistance and support." *In re Giorgianna H.*, 205 S.W.3d at 518 (citations omitted). DCS employees must affirmatively and reasonably use their education and training to help a parent eliminate the conditions requiring removal of the children and to meet the responsibilities of the permanency plans before courts will terminate the parent-child relationship. *In re R.L.F.*, 278 S.W.3d at 316. DCS's duty to affirmatively assist parents exists even if the parents do not seek assistance. *Id*. (citing *In re C.M.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *7 (Tenn. Ct. App. March 9, 2004)).

The Legislature, however, did not place the burden to reunify parent and child on DCS's shoulders alone. *See State, Dep't of Children's Servs. v. Estes*, 284 S.W.3d 790, 801 (Tenn. Ct. App. 2008). Reunification "is a two-way street, and neither law nor policy requires the Department to accomplish reunification on its own without the assistance of the parents." *In re Tiffany B*., 228 S.W.3d at 159 (citations omitted). "Parents share the responsibility for addressing the conditions that led to the removal of their children from their custody." *Id*. Once services have been made available, parents must make reasonable efforts to rehabilitate themselves. *Id*. The reasonableness of DCS's efforts should be decided on a case-by-case basis in light of the unique facts of the case. *Id*.

As noted above, Mother has failed to either appear or participate in any meaningful way in this case. Mother's lack of participation is apparent in the sparsity of the appellate record. Simply put, the record does not contain the information that we usually find in parental termination cases, i.e., information concerning a parent's employment, housing, living conditions, drug and alcohol history, family history, *etc*. Because of the conspicuous lack of evidence, it is difficult to comprehend the basis for the multiplicity of grounds for termination found by the trial court. This Court has previously held that a parent's failure to participate in termination proceedings, resulting in a record "devoid of proof," is insufficient to support termination of parental rights without some affirmative evidence establishing a ground for termination. *See In re Zeylon T.S.*, 2011 WL 5052957, at *9 (Tenn. Ct. App. 2011). As explained by this Court:

The State's argument points to the most troubling part of this case, namely, that Mother's utter refusal to engage or cooperate with DCS or participate in the proceedings leaves the record devoid of proof as to Mother's condition, her home, her income, her mental health, or anything else. Of course, the State has the affirmative burden of establishing this ground [i.e., persistence of conditions] by clear and convincing evidence. We are concerned that reversing on this ground would be in essence rewarding Mother's bad behavior, namely, her refusal to cooperate or participate. The State, however, has provided no authority indicating that a lack of evidence on this ground is sufficient to carry the State's burden. Therefore, we reluctantly reverse the Juvenile Court's finding on this ground.

*Id.* Thus, despite a parent's refusal to participate in proceedings, resulting in a exiguous record, the burden remains on the State to affirmatively prove at least one ground for termination by clear and convincing evidence. Consequently, in parental termination cases such as this one, the "absence of evidence is not evidence of absence."[7]

From our review of the record, the evidence unquestionably supports the establishment of one ground by clear and convincing evidence—abandonment by willful failure to visit. Based upon DCS's records, its affidavit of reasonable efforts, and the testimony, it is clear that DCS not only notified Mother of her right to visit Deon, but DCS also set specific times for visitation. Mother's attorney does not dispute that Mother knew about her right and opportunities to visit. Despite DCS's attempt to facilitate visitation, the record indicates that Mother has neither visited Deon, nor made any inquires as to the child's whereabouts or welfare since he came into the State's custody. Accordingly, there is clear and convincing evidence in the record to support a finding that, despite reasonable efforts on the part of DCS (and Mother's attorney), Mother has willfully failed to visit the child in (at least) the four months preceding the filing of the petition to terminate her parental rights.

Having determined that clear and convincing evidence exists to support this ground for termination of Mother's parental rights, and in light of the sparsity of evidence in this record, we pretermit discussion of the other grounds found by the trial court.

### V. Best Interest

When at least one ground for termination of parental rights has been established, the

---

[7] This quotation is attributable to United States astronomer Carl Sagan.

petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. ***White v. Moody***, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). When a parent has been found to be unfit upon establishment of a ground for termination of parental rights, then the interests of parent and child diverge. ***In re Audrey S.***, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005). The focus shifts to the child's best interest. *Id*. at 877. Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id*. However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). "The child's best interest must be viewed from the child's, rather than the parent's, perspective." ***Moody***, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case at Tennessee Code Annotated Sections 36-1-113(I). These factors include, but are not limited to, the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>
> *                         *                         *
>
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable

manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). This Court has noted that, "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877.

The trial court made specific findings concerning the child's best interest. From our review of the entire record, we conclude that clear and convincing evidence exists to support the majority of these findings. As discussed above, although given ample opportunity, Mother has failed to visit the child. There is no evidence that Mother and Deon have any meaningful relationship; there is, however, evidence in the record to suggest that Deon has bonded with his foster family, and they with him. The foster family has indicated a desire to adopt Deon. Mother's lack of participation in these proceedings, her failure to visit, and her general lack of concern for the child is proof of her inability and lack of desire to parent Deon. Furthermore, Mother's failure to participate in this case has resulted in a dearth of evidence concerning Mother's housing, current employment status, and arrest record. Accordingly, it would not be in the child's best interest to delay his integration into a safe and stable environment in the hope that Mother will improve her condition and undertake her parental responsibilities. To do so would be nothing more than speculation on the part of the Court. From the record as it exists, we conclude that there is sufficient evidence to support a finding that termination of Mother's parental rights is in Deon's best interest.

## VI. Conclusion

For the foregoing reasons, we affirm the order of the trial court, terminating Mother's parental rights on the ground of abandonment by willful failure to visit. The case is remanded for further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Mother. Because Mother is proceeding as a pauper in this appeal, execution may issue for costs if necessary.

_____

J. STEVEN STAFFORD, JUDGE